# DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
## FOURTH DISTRICT

**JENNIFER SHAPIRO** and **CRAIG SHAPIRO,**
Appellants,

v.

**FIRST PROTECTIVE INSURANCE COMPANY** d/b/a
**FRONTLINE INSURANCE COMPANY,**
Appellee.

No. 4D22-1133

[March 29, 2023]

Appeal from the Circuit Court for the Fifteenth Judicial Circuit, Palm Beach County; John S. Kastrenakes, Judge; L.T. Case No. 502021CA001384.

William D. Mueller, Elliot B. Kula, and W. Aaron Daniel of Kula & Associates, P.A., Miami, and James E. Mitchell and Valorie S. Chavin of Chavin Mitchell Shmuely, Miami, for appellants.

Paulo R. Lima and Elizabeth K. Russo of Russo Appellate Firm, P.A., Miami, and Melissa G. McDavitt of Conroy Simberg, West Palm Beach, for appellee.

GERBER, J.

The homeowners appeal from the circuit court's final summary judgment in the insurer's favor on the homeowners' claim for benefits under their homeowners' insurance policy. The homeowners argue the circuit court reversibly erred in two respects: (1) by finding the homeowners had failed to provide the insurer with timely notice of the loss; and (2) by finding the homeowners had failed to rebut the presumed prejudice to the insurer's claim investigation due to the homeowners' lack of timely notice of the loss.

On the first argument, we affirm without further discussion. On the second argument, we conclude genuine issues of material fact exist as to whether the insurer was prejudiced by the homeowners' lack of timely notice of the loss. We therefore reverse the final summary judgment.

We present this opinion in three parts:

1. The homeowners' policy and benefits claim;
2. The homeowners' breach of contract action; and
3. This appeal.

### 1. *The Homeowners' Policy and Benefits Claim*

The homeowners' policy provided coverage for claims reported "within three years after [a] hurricane first made landfall or a windstorm other than a hurricane caused the damage." The policy had a $541,182 coverage limit, with a 2% hurricane deductible equaling $10,824. The policy pertinently provided:

> Your Duties After Loss. In cases of a loss to covered property, you must see that the following are done:
>
> a. Give prompt notice to us or our agent.
>
> …
>
> d. Protect the property from further damage. If repairs to the property are required, you must:
>
> > (1) Make reasonable and necessary repairs to protect the property; and
> >
> > (2) Keep an accurate record of repair expenses[.]

The policy also contained a "Suit Against Us" clause which stated: "No action can be brought against [the insurer] unless there has been full compliance with all of the terms … of this policy …."

The homeowners' policy was in force when Hurricane Irma struck South Florida on September 10, 2017. The homeowners first observed their home's roof leaking in May 2018. Before notifying the insurer of any property damage to the home, the homeowners "took immediate action to mitigate [their] damages, including hiring a … roofing contractor to perform various roof repairs." The homeowners explained they "did not file an insurance claim at the time of the conducting of the initial repairs given that they believed the roof was adequately repaired at a relatively minimal cost."

However, in the months after the initial repairs, the homeowners continued to observe roof leaks, for which they again hired the roofing contractor to perform various roof repairs, without notifying the insurer. The amounts and dates of the repairs were as follows:

- $860.57 in May 2018;
- $860.57 in June 2018;
- $375.00 in June 2019; and
- $925.00 in March 2020.

After the repair attempts failed to fix the leaks, the roofing contractor advised the homeowners that the roof would require a full replacement.

On September 8, 2020 – just two days short of the homeowners' three-year deadline to file a claim after a hurricane – the homeowners submitted a claim to the insurer for Hurricane Irma damages.

Within days of the claim, the insurer's adjuster inspected the homeowners' roof. The insurer's adjuster reported having found:

a. Tiles that were damaged by installation defects, expansion and contraction of decking, and footfall;

b. No wind lifted tiles on the eaves fields or ridge caps of the roof;

c. Wear and tear and aging of the water proofing underlayment installed on the roof;

d. Wear and tear to the underlayment in the valley of the roof as well as in the area of the roof to wall area next to the flat roof; and

e. There was no visible windstorm or hail damage found on any elevation of the exterior of the property.

The insurer's adjuster also suggested that the insurer send an engineer to inspect the property, but the insurer did not do so.

Ultimately, the insurer sent a letter to the homeowners denying coverage, pertinently stating: "Failure to notify [the insurer] of the loss as soon as possible has prejudiced our ability to independently confirm the cause, origin, date of loss and duration of the reported damages."

3

## 2. *The Homeowners' Breach of Contract Action*

After the insurer denied the homeowners' claim, the homeowners filed a breach of contract action against the insurer.

The insurer's answer denied the homeowners' allegations, alleging the insurer "did not find any damage attributable to the alleged loss resulting from Irma."  The insurer's affirmative defenses included an argument that "the [homeowners] failed to give prompt notice as required under their post-loss obligations with in [sic] the [p]olicy, thereby prejudicing the investigation, and barring recovery in this instance."

The insurer later filed a summary judgment motion similarly arguing that the homeowners' failure to provide timely notice had "significantly prejudiced [the insurer's] ability to make a reasonably informed coverage determination."

In support of the insurer's summary judgment motion, the insurer submitted its adjuster's affidavit which attested that the homeowners' roof damage was attributable to other causes.  The insurer also submitted a corporate representative's affidavit stating the following conclusions, but without providing any detail or qualified support:

> [The homeowners'] failure to provide [the insurer] with prompt notice of their claim for damages prejudiced [the insurer's] ability to investigate the same.

> Additionally, [the insurer] was prejudiced by [the homeowners'] failure to show the damaged property.

> To this end, following the passage of Hurricane Irma, [the homeowners] made repairs to the roof of the subject property.

> Thus, [the insurer] was unable to observe a portion of the [homeowners'] roof that was allegedly damaged by Hurricane Irma, which prejudiced [the insurer's] ability to investigate the claim.

(paragraph numbers omitted).

The homeowners filed a response to the insurer's summary judgment motion, pertinently arguing that even if the homeowners' notice was not prompt, the insurer's ability to investigate the claim had not been prejudiced:

[E]ven if there were no question of fact as to whether the claim was timely reported, substantial evidence exists in this case that would rebut any presumption of prejudice. [The insurer] cannot hide behind a defense of "prejudice" where it did not even attempt to do anything more than the most cursory investigation. It had more than ample opportunity to have an engineer or roofer examine the property – but chose not to. It similarly made no attempt whatsoever to contact [the homeowners'] roofer who conducted repairs after the storm to determine the property's condition at that time.

In support of the homeowners' response, the homeowners filed the affidavit of a retained engineer ("the homeowners' engineer"), who had inspected the property in 2022 to identify the roof leaks' cause. The homeowners' engineer pertinently attested:

Based on my observations regarding the type of damages noted above, it is my opinion within a reasonable degree of engineering probability that the roofing system has more likely than not sustained direct roof and interior damage as a direct result of the powerful winds, wind-borne debris and heavy rainfall during September 9th/September 10th, 2017, Hurricane Irma.

...

The inspection of the roofing system and review of the photographs demonstrated that the roof tile system was damaged due to wind and wind-borne debris, which I attributed to being caused by Hurricane Irma, including the openings/tears at the underlayment membrane caused by the tile movement from wind as identified by cuts, scuffs, gouges, membrane damages or ruptures due to the sharp edges of the broken tiles and/or wind-borne debris. My inspection and review of the photographs did not demonstrate dull and rounded edges at the roof tile cracks consistent with being caused by other windstorm events that pre-date Hurricane Irma. Also, the water damage observed to the underside of the roof decking in the attic did not reveal the heavy dark rot deterioration that would be consistent with being caused by other windstorm events that pre-date Hurricane Irma.

After a hearing, the circuit court orally pronounced it was granting the insurer's summary judgment motion. The circuit court found "as a matter of law that this was not a prompt report," and that "[the homeowners] failed to rebut the presumption of prejudice here with the evidence that has been submitted to the Court." The circuit court did not provide any detail in its oral pronouncement or its later written order explaining how the homeowners had failed to rebut the presumed prejudice to the insurer.

### 3. *This Appeal*

This appeal followed. The homeowners raise two arguments. First, the homeowners argue the circuit court reversibly erred by finding the homeowners had failed to provide the insurer with timely notice of the loss. As mentioned above, on this argument, we affirm without further discussion.

Second, the homeowners argue the circuit court reversibly erred by finding the homeowners had failed to rebut the presumed prejudice to the insurer's claim investigation due to the homeowners' lack of timely notice of the loss. The homeowners summarize their second argument more specifically as follows:

> [The insurer] requested and received a presumption that it was prejudiced by the [homeowners'] untimely notice despite probative record evidence demonstrating that [the insurer] was not prejudiced. To the contrary, the *qualitatively better evidence* in the record demonstrates an affirmative lack of prejudice such as to burst the legal presumption. The [homeowners] were the only party that engaged an expert to visit the property and that expert had no issue investigating the cause of loss. He conclusively opined that no other investigator should suffer prejudice due to the passage of time. That testimony was not contradicted by [the insurer]. Which is to say, it is the [homeowners'] expert testimony being weighed against the legal effect of [the insurer's] rebuttable presumption.

The insurer summarizes its response as follows:

> [T]he record contains ample unrebutted evidence that [the insurer] was prejudiced in its ability to evaluate the extent and scope of the loss, in light of [homeowners'] multiple repairs and the evidence that the damage worsened during

6

the three years before they reported it. That prejudice went
unrebutted, which supports affirmance[.]

Applying de novo review, we agree with the homeowners' second
argument. *See Gesten v. Am. Strategic Ins. Corp.*, 339 So. 3d 1008, 1010
(Fla. 4th DCA 2022) ("A trial court's order entering final summary
judgment is ... reviewed de novo.").

The instant case is virtually indistinguishable from *Stark v. State Farm
Florida Insurance Co.*, 95 So. 3d 285 (Fla. 4th DCA 2012). In *Stark*, after
Hurricane Wilma struck in October 2005, the insureds became "aware of
roof damage" to their home. *Id.* at 286-87. The insureds hired a company
to repair or replace approximately twenty-three broken roof tiles, for which
they paid $300. *Id.* at 287. The insureds believed that the cost of repairing
the damage "would not exceed the deductible" of $9,665. *Id.* Throughout
the next few years, the insureds' roof continued to leak and their home
continued to suffer further damage. *Id.*

The insureds, in March 2009, reported their claim to their insurer. *Id.*
An investigator for the insurer observed fifty-two repaired roof tiles and
thirteen replaced roof tiles but was "unable to establish a date and cause
of loss." *Id.* As a result, the insurer informed the insureds that the
investigator could "not find any accidental direct physical loss to the
dwelling which [could] be directly related to Hurricane Wilma." *Id.* The
insureds provided to the insurer the $300 repair receipt from 2005,
reflecting that the repairs were "the result of storm damage caused by
Hurricane Wilma." *Id.* The insurer responded that the receipt did not
"sufficiently overcome [its] prejudiced ability to independently investigate
the cause and date of any damage which necessitated the roof repairs."
*Id.*

The insureds then sued the insurer for breach of contract. *Id.* The
insurer responded with a summary judgment motion based on the
insureds' failure to comply with their post-loss duties under the policy. *Id.*

In opposition to the insurer's summary judgment motion, the insureds
filed a retained engineer's affidavit. *Id.* The engineer averred that he had
inspected the insureds' roof in 2010. *Id.* According to the engineer, "[t]he
inspection revealed a classic pattern of wind damage. The only possible
event that could have caused this type of damage was Hurricane Wilma."
*Id.* The engineer then stated that "Hurricane Wilma caused the tile uplift
and tile breakage damages that we observed on the roof." *Id.* The engineer
further opined that "within reasonable engineering probability ... the
classic pattern of windstorm damage from Hurricane Wilma ... was clearly

7

evident upon the inspection which was conducted in 2010 and would have been evident upon an inspection by" the insurer. *Id.*

The circuit court granted the insurer's summary judgment motion, finding that the insureds failed to report the loss in a "timely fashion. And, therefore, it constitutes as presumed to be prejudice." *Id.*

On appeal, we reversed. *Id.* at 288-89. We pertinently concluded that the insureds' engineer's affidavit, among other evidence, created issues of material fact as to whether the insureds could overcome the presumption of prejudice applicable to the late notice provided to the insurer. *Id.* at 288. More specifically, relying on the insureds' engineer's opinion that the insurer still could have observed the "classic pattern of windstorm damage" left by Hurricane Wilma as late as 2010, we concluded the insureds could convince a finder of fact that their noncompliance with the notice provision did not prejudice the insurer's "opportunity to investigate the facts." *Id.*

Like the insureds in *Stark*, the homeowners here submitted a similar engineering opinion. In the instant case, the homeowners' engineer, based on his inspection, opined not only that the homeowners' roof more likely than not had been damaged as a direct result of Hurricane Irma in 2017, but also that this damage still could be observed as late as 2022, five years after Hurricane Irma. Thus, as in *Stark,* the homeowners' engineer's affidavit created issues of material fact as to whether the homeowners could overcome the presumed prejudice applicable to the late notice provided to the insurer.

Consistent with *Stark,* we conclude the circuit court here also erred in granting the insurer's summary judgment motion. Therefore, we reverse the final summary judgment in the insurer's favor, and remand for further proceedings on the insureds' breach of contract action.

*Affirmed in part, reversed in part, and remanded for further proceedings.*

WARNER and LEVINE, JJ., concur.

* * *

***Not final until disposition of timely filed motion for rehearing.***

8